

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed November 28, 2006            **United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| CAROLYN ANN COLEY, | § | CASE NO. 06-50017-RLJ-7 |
| | § | |
| Debtor | § | |
| LVR CARPET CENTER, INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-5033 |
| | § | |
| CAROLYN ANN COLEY, | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OPINION**

On October 25, 2006, trial was held on the complaint of LVR Carpet Center, Inc. ("LVR Carpet") asserting that its claim against Carolyn Ann Coley, the defendant and debtor, should be declared nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and/or (a)(6). The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b); this is a core proceeding pursuant to 28

U.S.C. § 157(b)(1). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

The claim of nondischargeability in this case arises out of a payment in the amount of $8,959 that was made initially by Farmers Insurance Group for repairs to Vince and Carolyn Ann Coley's home at 3414 103rd Street in Lubbock, Texas. The Coleys' home was damaged by a fire in April of 1999. The check was issued by Farmers Insurance Group in November of 1999 and made payable to Homeside Lending, Inc., the mortgage holder on the Coleys' home. Homeside then issued check number 1830680 in the amount of $8,959 payable to the order of Vince Coley and Carolyn Ann Coley and Addison Roofing and Remodeling. The check ended up in Vince Coley's hand, was purportedly endorsed by all payees and deposited, on January 13, 2000, in a bank account at American State Bank carried under the name of Carolyn Ann Coley, account number 4274105. The Coleys divorced in April of 2005. Carolyn Ann Coley filed her chapter 7 bankruptcy case on February 6, 2006.

LVR Carpet contends its claim in this bankruptcy case, which was previously reduced to judgment in a prior state court action against the Coleys[1], should be declared nondischargeable under 11 U.S.C. § 523(a)(4), which states that a "discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ."[2] LVR Carpet

---

[1] On September 17, 2003, LVR Carpet obtained a judgment in Cause No. 2001-591,754 in the County Court at Law No. 3 of Lubbock County, Texas against Vince and Carolyn Coley for $6,694.39, plus prejudgment interest of $4,481.40; $338.50 for costs of court; and postjudgment interest accruing at ten percent per annum.

[2] As stated, LVR Carpet's complaint also alleges that its claim should be declared nondischargeable under subsections (a)(2)(A) and (a)(6) of section 523. However, both at trial and on its motion for summary judgment, LVR Carpet's allegations and evidence centered on the 523(a)(4) cause of action.

argues that Coley committed fraud or defalcation while acting in a fiduciary capacity with the fiduciary relationship arising under Texas Property Code sections 162.001 through 162.031, which has been described as the Texas Construction Trust Fund Statute. The relevant provisions of the statute provide as follows:

§ 162.001. Construction Payments and Loan Receipts as Trust Funds

(a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

§ 162.002. Contractors as Trustees

A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds.

§ 162.003. Beneficiaries of Trust Funds

An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

§ 162.031. Misapplication of Trust Funds

(a) A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

(b) It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53.

.   The affirmative defense at section 162.031(b) for "actual expenses directly related to the construction or repair of the improvement" is limited to costs actually and directly tied to the improvement in question and does not include "indirect" expenses, such as overhead to the contractor in question, or "profit" built into the job's price. *In re Faulkner*, 213 B.R. 660 (Bankr. W.D. Tex. 1997).

In ruling on a motion for summary judgment filed by LVR Carpet in this case, the Court noted that the Fifth Circuit in *Matter of Nicholas*, 956 F.2d 110, 113 (5th Cir. 1992) held that the Texas Construction Trust Fund Statute creates fiduciary duties encompassed by section 523(a)(4) of the Bankruptcy Code. *See* October 16, 2006 Memorandum Opinion and Order. The Court further noted that such fiduciary duties are defined by the prohibited activity – using construction trust funds for purposes other than paying the identified beneficiaries or expenses "directly related to the construction project." *Id.*[3] The trustee (the one that has received the construction payments) has the fiduciary obligation to not so use the funds. By its Memorandum Opinion, the Court determined that the $8,959 constitutes trust funds as such were paid to the contractor, Addison Roofing and Remodeling; that Carolyn Ann Coley is an "owner" who received the funds upon deposit of the funds in the Carolyn Ann Coley account; and that LVR Carpet

---

[3] The Court hereby sets forth footnote one from its prior Memorandum Opinion and Order:

In a subsequent opinion, *Matter of Tran*, 151 F.3d 339 (5th Cir. 1998), the circuit noted that in both *Nicholas* and the prior case *In re Boyle*, 819 F.2d, 583 (5th Cir. 1987), it held that the Texas Construction Trust Fund Statute created fiduciary duties under section 523(a)(4) only to the extent that it defined wrongful conduct. The court then stated that such holdings "are seemingly in tension" with the rule that a statute must impose fiduciary duties prior to the act of wrongdoing. 151 F.3d at 344 n. 28. The holding in *Nicholas* has recently been cited as the Fifth Circuit's definitive statement of the law regarding whether a fiduciary relationship arises under the Texas Construction Trust Fund Statute for purposes of section 523(a)(4) of the Bankruptcy Code. *See In re Cook*, 2006 WL 470586 (S.D. Tex. 2006).

qualifies as a beneficiary of the $8,959 because it provided services and materials in connection with the repairs and remodeling work done on the Coleys' home. *Id*. The Court further noted that no dispute exists concerning whether LVR Carpet properly installed the carpet and vinyl at the Coleys' home or whether LVR Carpet was not paid in full for its services. *Id*. The Court denied summary judgment to the extent a fact question remained concerning the amount of funds misapplied by Coley. *Id*.

Upon trial, evidence was presented on the issue of Coley's alleged misapplication of the $8,959 (or a portion thereof). The bank statement of February 13, 2000, for the Carolyn Ann Coley account reflects that the $8,959 was part of a $9,421.52 deposit made to the account on January 13, 2000. Pl. Ex. E at 00232. For the period covered by the statement, January 12, 2000, through February 11, 2000, the $9,421.52 deposit was one of two deposits made aggregating $11,451.32, the second deposit designated as a "LISD payroll" deposit made on January 21, 2000, for $1,329. *Id*. (Carolyn Ann Coley was an employee of the Lubbock Independent School District.) Fifty-six withdrawals were made totaling $8,040.52. *Id*. The remaining balance at the end of the period was $4,841.93. *Id*. The largest check written was for $2,430 made payable to LVR Carpet. *Id*. at 00232, 00244. Carolyn Ann Coley testified that she was responsible for signing and issuing the check to LVR Carpet. It was issued on February 9, 2000, and was paid on February 10, 2000. *Id*. The next two largest withdrawals are two mortgage payments made on January 14, 2000, and February 9, 2000, each in the amount of $802.83. *Id*. At 00232. There are no other extraordinary withdrawals from the account.

The evidence also includes the bank statements for both the month immediately preceding and the month immediately following the period covered by the February 13, 2000,

statement. The January 12, 2000, statement, covering the period of December 12, 1999, to January 12, 2000, reflects two deposits in the amount of $2,028.55, one described as "LISD payroll" of $1,328.55 and the other a "transfer" of $700. Pl. Ex. E at 00100. Forty-three withdrawals were made in the total amount of $2,324.91. *Id*. The ending balance was $1,431.13, which was the amount carried over as the beginning balance for the February 13 statement. *Id*. The March 12, 2000, statement, for the period of February 13, 2000, to March 12, 2000, identifies the same two deposits totaling $2,029.80 and reflects sixty-four withdrawals and debits in the total amount of $4,243.11. *Id*. at 00105. The ending balance was $2,628.62. *Id*.

Although the Carolyn Ann Coley account is in her name only, Carolyn Ann Coley testified that Vince Coley routinely wrote checks on the account and did so during the periods covered by the statements discussed above. She identified several checks that Vince Coley signed (including one with his driver's license number added), as well as several checks that she signed. In reviewing the copies of all the checks issued and paid during the period covered by the February 13, 2000, statement, it is apparent that two people were signing checks on the account. Her testimony that Vince Coley issued checks on the account is therefore credible.

As noted above, the Court previously determined in ruling on LVR Carpet's summary judgment that there was no dispute that LVR Carpet had not been repaid in full. Specifically, apart from the $2,430 payment made to LVR Carpet on January 9, 2000, by Carolyn Ann Coley, LVR Carpet has not been paid the balance of the amount owing for its services. Its claim of nondischargeability is ultimately measured by the difference between the $8,959 and the $2,430.[4]

---

[4]LVR Carpet made this explicit during closing argument at trial.

LVR Carpet, therefore, established that it was a beneficiary of the $8,959 and that, apart from the one $2,430 payment, it was not paid from the insurance funds. From the evidence submitted, specifically the three bank statements with copies of checks (although not all checks for the three months of statements are included and of those that are included several are illegible), there is no indication that any other checks during the three month time span were issued for work performed on the house. Carolyn Ann Coley did not, by way of rebuttal, identify any other payments made out of the Carolyn Ann Coley account for work done on her house. While no theory or mechanism of tracing has been suggested or proposed by the parties, the Court naturally assumes that the funds represented by the $8,959 were eventually exhausted by the Coleys. The $6,529 (which represents the difference between the deposit and the amount paid to LVR Carpet) was therefore used by the Coleys for purposes other than paying beneficiaries or other "actual expenses directly related to the construction or repair" of the Coleys' home. *See* TEXAS PROPERTY CODE § 162.031(a), (b). Such sum was misapplied. *Id*.

The question, then, is whether Carolyn Ann Coley should be deemed responsible for the misapplication of the $6,529. Carolyn Ann Coley testified that she was unaware of any of the details regarding her and her former husband's accounts and that Vince Coley handled all their financial affairs, including most everything involved with the work done on their home. She testified, for example, that she did not know that she and her husband had a joint account, one carried in both their names, in addition to the Carolyn Ann Coley account. Her feigned ignorance of their financial affairs and of everything associated with the repairs and remodeling project is disingenuous, however. She, along with Vince Coley, routinely issued checks from the account and is certainly charged with knowledge that the Carolyn Ann Coley account was carried

in her name only. She had to see that her name only was printed on each check that she issued. And though she testified that Vince Coley handled all transactions concerning the repairs done to the home and payments made for the work performed, she was obviously aware that LVR Carpet was not paid as *she* issued the $2,430 check as a payment to LVR Carpet. Given the amount of the check relative to the typical deposits made and balance maintained on the Carolyn Ann Coley account, she also had to know that the $8,959 had been deposited into the account for the express purpose of paying for work done on their home. She knew and allowed, as a matter of routine, her husband to write checks on the account and, to the extent that Vince Coley diverted the funds for other purposes, she allowed it to happen. In effect, the Coleys collectively misapplied the funds. Imputing Vince Coley's wrongdoing to Carolyn Ann Coley is supported by Texas law. *See Wages v. State*, 703 S.W.2d 736 (Tex. App. – Houston [14th Dist.] 1985, pet. dism'd) (felony conviction for theft by check affirmed when defendant, wife, passed twelve worthless checks written by her husband despite testimony from husband that he had written the checks and had taken extensive efforts to prevent the defendant from having any access to any of the bank records and that the defendant had no idea the checks were worthless).[5] The statute refers to a "trustee who, intentionally or knowingly . . . directly or *indirectly* retains, uses,

---

[5]Notably, the court said as follows:

> According to her own witnesses, over one hundred bank notices, concerning dishonored checks, were delivered to her office as well as a notice of the closing of the account and a final bank statement. There was no evidence presented to show that the appellant did not open and read any of these bank communications. It would seem that an ordinary and prudent person under the circumstances would recognize a duty to confirm the status of the account, at least prior to embarking on an extraordinary course of check-cashing activity in the local stores . . . . We find no evidence that the appellant formed a mistaken belief which would negate the culpable mental state of the theft offense because any such belief would not be reasonable under the circumstances.

*Id.* at 740.

disburses, or otherwise diverts trust funds . . . ." TEXAS PROPERTY CODE § 162.031(a) (emphasis added). The Court concludes that the elements of the Texas Construction Trust Fund Statute are satisfied as to Carolyn Ann Coley for the entirety of the $6,529.

Finally, the Court addresses whether a finding that a misapplication occurred under the Texas Construction Trust Fund Statute satisfies the "fraud or defalcation" element of section 523(a)(4) of the Bankruptcy Code. The applicable case law[6] indicates, at least from this Court's reading, that a finding that the elements of the Texas statute have been satisfied, specifically the misapplication finding, likewise satisfies the elements of section 523(a)(4) – fraud or defalcation while acting in a fiduciary capacity. Regardless, the Court is convinced that the misapplication here constituted a defalcation for purposes of 523(a)(4). Defalcation has been defined as a "'willful neglect of duty, even if not accompanied by fraud or embezzlement.'" *Matter of Schwager*, 121 F.3d 177, 184 (5th Cir. 1997), quoting from *Moreno v. Ashworth*, 892 F.2d 417, 421 (5th Cir. 1990). Concerning the intent or mental state necessary to satisfy a finding of defalcation, the court in *Matter of Schwager* stated that "[w]hile defalcation may not require actual intent, it does require some level of mental culpability. It is clear in the Fifth Circuit that a 'willful neglect' of fiduciary duty constitutes a defalcation – essentially a recklessness standard." *Id.* at 185. Willfulness is measured by reference to what a reasonable person in the debtor's position knew or reasonably should have known. *See In re Green*, 2005 WL 4795013, *3 (Bankr. W.D. La. 2005). The bankruptcy court in the Eastern District of Texas has added that "'defalcation' is a broader term than embezzlement or fraud. It can be a mere deficit resulting

---

[6]The Court refers to the previous cases cited herein, *Matter of Nicholas*, 956 F.2d 110 (5th Cir. 1992), and the three cases set forth at footnote 1 supra, *Matter of Tran*, 151 F.3d 339 (5th Cir. 1998), *In re Boyle*, 819 F.2d 583 (5th Cir. 1987), and *In re Cook*, 2006 WL 470586 (S.D. Tex. 2006).

from the debtor's misconduct, even though he derived no personal gain therefrom." *In re Townsley*, 195 B.R. 54, 63 (Bankr. E.D. Tex. 1996). Carolyn Ann Coley certainly knew or should have known that the funds, the $8,959, were to be used exclusively for payment to LVR Carpet (or perhaps other contractors). She cannot avoid her obligation by merely pointing a finger at her ex-husband.

Upon the foregoing authorities, the Court concludes that LVR Carpet's claim that the sum of $6,529 should be declared nondischargeable as to Carolyn Ann Coley is sustained. The nondischargeable debt shall also include prejudgment (prior to the judgment of this Court) interest and costs as determined by the prior state court judgment. *See Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996).[7] Postjudgment interest shall accrue upon entry of judgment by this Court at the federal judgment rate. *See Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1208-1209 (5th Cir. 1993). As the Court has determined that LVR Carpet's claim is nondischargeable under section 523(a)(4) of the Bankruptcy Code, and given that LVR Carpet centered its arguments and evidence on section 523(a)(4), it is not necessary to address its claim under subsections (a)(2)(A) and (a)(6) of section 523.

### End of Memorandum Opinion ###

---

[7] *See* footnote 1. As the interest rate is based on a principal amount that is slightly less than the amount determined to be nondischargeable, a pro rata adjustment of the interest amount is appropriate.